Good morning, and may it please the Court. The evidence submitted during Mr. Boskovic's removal proceedings did not support the application of the persecutor's bar, which prevented Mr. Boskovic's applications for relief from removal with the exception of relief under the Convention Against Torture. The case should be remanded for an adjudication of whether he qualifies for affirmative relief. The regulations regarding the persecutor bar provide for a burden-shifting approach in regarding the application of the bar. To shift the burden of proof to the respondent, the Department of Homeland Security must first submit evidence of both personal involvement and purposeful assistance. In Mr. Boskovic's case, the only evidence that directly implicated him as being personally involved in persecution was a hearsay statement in a report made by an ICE agent. The Immigration Court erred legally in its consideration. Excuse me, there is plenty of testimony that permits an inference. The expert testimony, the records of the VRS, and that his unit was deployed to the places where war crimes were committed, don't those, as well as the admission, permit an inference that he was a participant at some level? I would disagree with that assertion, and the reason why is that although there was testimony and records, those show that Mr. Boskovic himself was positioned at defensive lines during a civil war. And there's no evidence that he himself actually engaged in the extrajudicial killings, persecution, and genocide that occurred during the Bosnian conflict. And if you particularly look at the period during July of 1996, that was where he was being positioned, guarding various military positions of the Bosnian VRS. And so, although there's a lot of evidence that he was a participant as a soldier in the civil war, there isn't evidence that he participated in the extrajudicial killings and the unlawful conduct that occurred during the conflict. Would you agree, though, that he would not have had to personally kill anyone to have this burden shifted? If he were part of a unit that did these killings and was present, wouldn't that be sufficient for him to have been part of the process? I think it would depend on the circumstances. So if you had a circumstance, for example, as a hypothetical, where everybody in the unit participated in unlawful killings or persecution, then that would be sufficient to shift the burden to a respondent. That isn't the case here, though, where only a limited number of people who were in the units that Mr. Boskovic were in actually were shown to have participated in the extrajudicial killings, persecution, and genocide. The standard is very low. The evidence has to indicate that one or more grounds may apply. So is there any case supporting what I'm hearing your view is that there would have to be almost by a preponderance that there would have to be proof that the alien was involved? Does it support your theory? Your Honor, it's not so much about the burden of proof as the type of evidence that there must be. And the evidence has to show that this personal individual was involved. And so the case I would say... But where do you get that from? Because again, the statutory language is the evidence has to indicate that one or more grounds for mandatory denial may apply. So it's at least on its face a very low level of evidence. Your Honor, I would cite a Kumar v. Holder. In that case, the respondent was a prison guard and had command authority in a prison in which the prison persecuted prisoners. And in that case, even though there was widespread involvement in persecution among the prison staff, this court actually held that that was sufficient evidence that the respondent himself was personally involved in the persecution. Isn't this more of a case though where it's he's not a guard, he's an actual member of the staff? So in other words, if one of the staff people where we know the staff was generally involved in abusing the prisoners said, well, I never did it and you don't have any direct evidence about me, isn't that more analogous than the Kumar situation? I'm not sure I see the distinction between that and Kumar because that was essentially what happened in Kumar, where he was, he had command authority. People in the prison were persecuting individuals and he said, even though I was a member of this organization that was, you know, committing persecution, I myself was not involved in it. And it's important to say that the court said that the evidence was insufficient to shift the burden to him in that case. In fact, if he hadn't testified, the fact that he testified was not material to the whole thing because they found that simply, I'm sorry, please finish your answer. Yeah, because the courts held that simply being a member of this prison where members of the prison committed persecution was not sufficient to shift the burden to the respondent to then try to prove the negative that he himself was not involved. I wanted to ask you about the thing that you referred to as a hearsay statement. I assume you mean Wyman recounting an admission by your client and ordinarily a party's own statement doesn't count as hearsay, but more importantly, your client cross examined him during the criminal case. So why isn't that sufficient, even if you otherwise might have a due process claim? Yes, Your Honor, I would love to answer that question. So the reason it wasn't sufficient is that the issues in the criminal case were wholly different from the issues in his immigration case. So there wasn't the incentive to cross examine regarding that specific statement because he wasn't being accused of war crimes. He was being accused of false statements and misuse of a visa. So his motivations to do a cross examination would have been totally different in an immigration case where that particular statement is so essential than it would have been in a criminal matter where whether he transported prisoners or not was immaterial to the case. It's also important to note that the ruling that the judge, the immigration judge said that he was referring to was a ruling on a motion to suppress and the legal standard in context for a motion to suppress is completely different than the legal standard in context of relying on a hearsay statement in immigration court to discern an essential issue of fact. To address the issue of whether it's a hearsay statement. So it is true. Can I just interject? Does it matter if it's hearsay because the federal rules of evidence are not applicable in the immigration proceedings? I think it does because they're, well, not necessarily because there are cases that say, I guess what matters is that there is a case that says, you know, you can't determine a report where the immigrant doesn't have the opportunity to cross examine or challenge the credibility of it. And for that, I would cite Singh v. Gonzales. I mean, that seems to go to Judge Graber's point that he did have the ability to cross examine the criminal case. Well, and I don't think there's anything about motivation. I mean, that really goes to due process. Is it fundamentally unfair to introduce this statement and you would have to explain why it was fundamentally unfair when it was his statement to the interviewer? Right. Well, I do think it's fundamentally unfair to determine a critical issue of fact in this immigration case based on a statement in a report that he doesn't have the opportunity to cross examine. I would also note, though, that he certainly had the opportunity to deny it if he didn't say it. Right. And that goes to the other problem in this case, where at the very minimum, the immigration judge should have made an independent decision as to whether that statement was reliable and could be relied upon to decide this essential issue of fact. Instead, the immigration judge said that he was accepting the district court's decision, and he was referring to his decision on the motion to suppress. And so the problem is that Mr. Boscovich never got an independent ruling on whether this piece of evidence, the statement in a report, should be relied upon by the immigration court to decide an essential issue of fact. And then the Board of Immigration Appeals, when it was reviewing that decision, said it was referring to the immigration court. And so at no point during his removal proceedings did he actually get somebody looking at the statement and making an independent judgment as to, okay, is this a statement that's reliable and that we can use to determine this essential issue of fact. What was the evidence other than Mr. Boscovich's testimony that he was not participating in any of the war crimes? Do you mean about that particular statement or in general? In general. So his argument was, I mean, his testimony was, first of all, with the statement he denied making it and that he did not transport money. Now, was there anything other than his testimony? That showed no, other than his testimony, that's correct. And, you know, his testimony was largely consistent with the documents submitted by ICE, which did show that he was a soldier that fought during the Civil War. There was no documentary evidence that showed that he himself participated in unlawful actions during that conflict. It did show he was promoted, however, right? And where he was deployed and all of those sorts of facts, as Judge Graber pointed out. That's true. Although it did show that he was promoted, it's important to realize he did not have command authority during the period in which the unlawful killings took place. And I'd like to reserve the remainder of my time. Thank you, Your Honors. You may do that. We will hear next from Mr. Stone. Good morning. May it please the Court. My name is Paul Stone. I represent the Respondent Attorney General of the United States. This case arises out of the atrocities committed in the Drina Valley during the Shevardnitsa genocide. The primary issue before the Court is whether, in the context of those atrocities, the evidence indicates the persecutor bar and the genocide or extrajudicial killing in admissibility grounds may apply to Boscovich's applications. And if they do, that then requires him to carry his burden to prove that they don't. There are three main events that show that those grounds may exist. The first is the ambush of the Bosniak men and boys at South and Common. The second is the blocking action at Bolchkovice. And the third is the sweep for straggling Bosniaks with orders to shoot the kill, that is, those who didn't make it through the breakthrough at Bolchkovice. Now, there's been a great deal of discussion about the declaration by Agent Wyman. Agent Wyman's declaration only contains information relating to the third of those events, that is, the sweep for straggling the Bosniaks. Mr. Boscovich explained in his declaration, I'm sorry, not his declaration, he explained to Special Agent Wyman, who put in his report, that one of the things they were ordered to do after the breakthrough at Bolchkovice was to round up straggling Bosniaks with orders to shoot to kill until July 22nd. The DHS's expert confirmed that that was something that the military police were involved in. Some of the International Criminal Tribunal for performing Yugoslavia decisions talk about those sweep operations. That's the only particular event that that declaration goes to. The evidence of the ambush that's often common and the blocking action at Bolchkovice are all independent of that. So the court doesn't even need to address that particular dispute. If it does, however, we do maintain that that evidence is not hearsay and it was not a violation of due process to admit it, to consider it, among all the other evidence. I'm prepared to go through all the various evidence showing that it indicates that the bars may apply. But that's all in our brief and I don't want to take up the court's time. I'm prepared to answer any questions that the court may have about our case. I don't have any further questions to my colleagues. We will obviously consider everything in the brief so you don't waive it by not discussing it orally. Certainly. Just to sum up, given the strong evidence indicating these bars apply, Mr. Boscovich had the burden to prove that they did not. He had to do so with credible evidence and he ultimately has not challenged the lack of credibility finding. So if the court finds the evidence indicates the bars may apply, then the court need go no further. Thank you very much. Thank you, Mr. Stone. Mr. Sherwood, you have some rebuttal time remaining. Yes, Your Honor. Your Honor, I just wanted to talk about the two events that he talked about. The defending of Balcovich and Zoff and Common. So first I'll talk about Zoff and Common where the evidence showed that he was detached in that area but there was no evidence that his unit actually encountered any troops. And the department's own experts said that he didn't have any evidence that they engaged either troops or civilians when he was detached to Zoff and Common. The second point was about defending Balcovich. So defending a position is a legitimate objective in a civil war. And Mr. Balcovich was on the line defending against an armed incursion. And while it's true that the movement of the column was caused by actions that were unlawful and an atrocity, Mr. Balcovich was not involved in those actions. And where he was positioned, it was part of a defensive operation. There was armed combat on either side. He, in fact, was injured in that combat. And it was, you know, defending a line is what is classically considered a legitimate military objective. And the president of the board is very clear that participating in a civil war, even on the side that has committed atrocities, does not make somebody subject to the persecutor bar unless they themselves had some personal involvement in the unlawful killings, genocide, or persecution. Let me identify what's really bothered me about this, which is that I understand the distinction you're trying to draw and the requirement for personal participation. But Petitioner seems to be saying, I didn't know anything about any of these horrible things that happened. And the fact that the horrible things happened seem inescapable today. And so it's one thing for him to say, look, yeah, there were horrible things happening, and I tried to tell them we shouldn't do that, and I refused to participate. But to say, I didn't know anything about this strikes me as, at best, an ostrich sticking his head in the sand, and more probably somebody who's in denial because he doesn't want to own up to what his own involvement was. And I understand that response. And I think what I would say is that there has to be two things. One is that there has to be purposeful assistance, and that's where knowledge goes to. So it's a, whether somebody knew that there was unlawful conduct goes to their knowledge when they took certain actions. There still has to be, their actions still have to be in furtherance, though, of the unlawful conduct. And their actions cannot simply be in furtherance of the legitimate military objectives of a military during a civil war. So I would draw the distinction between those things. And I would say that... But how does your client stay on that kind of knife's edge if he doesn't even acknowledge the existence of the atrocities? He can't say, he didn't say, look, it was bad. And I tried to stop it, or at least I refused to participate. He just said, I'm blind to everything going on. And it's hard for me to draw from that the line that you're asking us to draw. Well, I think if his actions were in furtherance, were directly involved in the unlawful conduct, then his knowledge of the fact that there were those atrocities would be material. However, in this case, since he did not purposely assist in the unlawful conduct, whether he knew about it at the time is not material to whether the burden should have shifted to him. Thank you, Your Honors. Thank you, Counselor. The case just argued is submitted, and we appreciate the arguments from both parties. Thank you, Counsel.
judges: Graber, Clifton, Ikuta